Garrett W. Wotkyns (AZ Bar No. 025887)
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone:  (480) 428-0141
Facsimile:  (866) 505-8036
gwotkyns@schneiderwallace.com

Peter H. Burke, Esq.
Gregory J. McKay, Esq.
BURKE HARVEY & FRANKOWSKI, LLC
One Highland Place
2151 Highland Avenue, Suite 120
Birmingham, Alabama 35205
Telephone:  (205) 930-9091
Facsimile:  (205) 930-9054
gmckay@bhflegal.com
pburke@bhflegal.com

**Attorneys for the Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **DEBRA ALIFF,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>)<br>) **CASE NUMBER:** _____ |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA,** | )<br>)<br>)<br>)<br>) |
| **Defendant.** | ) |

## COMPLAINT

Comes now the Plaintiff, Debra Aliff, and hereby files her Complaint against Life Insurance Company of North America.

**PARTIES**

1.     The Plaintiff, Debra Aliff ("Aliff"), is a citizen of the state of Arizona over eighteen years of age. Ms. Aliff resides at 201 Vallejo Street, Apartment # 2, Prescott, Arizona.

2.     Defendant, Life Insurance Company of North America, ("LINA") administers claims under Group Short Term Disability Policy No. SGD0600885 ("the Plan") that has improperly denied owed benefits to Ms. Aliff.

**JURISDICTION AND VENUE**

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for short-term disability benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a), (e)(1) and (f) and 28 U.S.C. §1331. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

**STATEMENT OF FACTS**

4.     Ms. Aliff is an insured under ERISA Policy No. SGD0600885, sponsored by Ms. Aliff's employer, Spire Capital Partners, LP.   LINA administers claims under the policy.  The policy provides insureds, like Ms. Aliff, short term disability benefits.

5.     On or about November 11, 2010, Ms. Aliff became disabled and unable to perform her regular occupation as a Skymall Customer Service Representative.  Ms. Aliff's primary job duties included taking calls regarding orders, speaking with customers, following scripts and pulling up needed information in the company computer programs.

6.      Ms. Aliff applied for disability benefits with LINA on December 14, 2010 and was denied short-term benefits by letter dated December 28, 2010.   The denial letter states in part:

> After reviewing all of the office notes, it was revealed that the medical that was provided by your doctors do not support restrictions and limitations that have been placed on you.  We have confirmed with Dr. Combs' office that they have not taken you out of work and have only released to word work from home.[1]

7.      Dr. Stanley Combs, M.D., Ms. Aliff's primary care physician, by letter dated January 15, 2010 and in response to LINA's mischaracterization of his statements regarding Ms. Aliff's work restrictions, clarified his position stating:

> As I indicated in the questionnaire I completed, I advised that she did not work in a workplace, but in her own home.  It was not a restriction to work from home, that was the situation she could no longer function under as she has worked from home for many years.  I advised her to continue to do what she is capable of doing at home.  Her conditions create enough restrictions.  I know she has difficulty with her day to day living skills in addition to continuing to work.  It is my opinion that there is no other option for her but to be classified as disabled.  I cannot imagine any type of employment she would be capable of doing in her condition where she could consistently support herself with her many limitations.[2]

8.      Ms. Aliff appealed the denial by letter dated January 25, 2011.[3]  In her appeal letter, Ms. Aliff detailed her numerous debilitating ailments and how they caused her to be unable to perform the duties of her occupation.

9.      Although LINA has attempted to characterize her claim as based primarily on her diabetic condition, Ms. Aliff suffers from a number of serious mental and physical impairments in addition to diabetes.  Her disabling impairments include the following:  diabetes, polymyalgia rheumatica ("PMR"), cervical spondylosis, cubital tunnel syndrome of the left arm, reactive

---

[1] Denial letter attached hereto as Exhibit "A".
[2] Dr. Combs' letter attached hereto as Exhibit "B".
[3] First appeal letter attached hereto as Exhibit "C".

airway disorder, irritable bowel syndrome, degenerative disc disease, musculoskeletal pain, major depression disorder and ADHD.

10. Ms. Aliff received treatment for her numerous debilitating conditions from several medical providers, in addition to Dr. Combs. Ms. Aliff's rheumatologist, Dr. Ramina Jajoo, M.D., treated her for fibromyalgia and polymyalgia rheumatica ("PMR"). On November 23, 2010, Dr. Jajoo noted that Ms. Aliff's symptoms had not improved significantly. During the exam eleven of eighteen tender points consistent with fibromyalgia were present. Dr. Jajoo additionally noted, "I agree that she needs to be on long-term disability as she is unable to maintain gainful employment at this point. She has too many medical problems going on and a lot of doctor visits. She is simply not able to keep a regular job."

11. Medical records from West Yavapai Guidance Clinic, where Ms. Aliff receives treatment for her mental disorders, indicate that she has been struggling with depression for the last two to three years. Her depression has progressed and she also suffers from suicidal thoughts and visual hallucinations. On June 30, 2011, Ms. Aliff was hospitalized for seven days for depression and suicidal ideations at Windhaven Psychiatric Hospital. At intake, Ms. Aliff's Global Assessment of Functioning Score was indicated by her therapist, Jennifer Price, to be 48. A GAF score that is lower than 50 indicates that there person has serious symptoms or any serious impairment in social, occupation, or school functioning. In notes from Ms. Aliff's visit on July 14, 2011 with Susan Cosgrove, NP, Ms. Aliff's GAF score had improved only slightly to 51, indicating moderate symptoms or difficulties in social, occupational or school functioning.

12. Ms. Aliff lost her medical insurance after being denied by LINA and subsequently terminated by her employer and was no longer able to afford to see her usual providers. She

began treatment with Dr. Ronald Parfitt, M.D. on February 3, 2011. Dr. Parfitt made several adjustments to Ms. Aliff's medications during the initial visit.

13. During her March 29, 2011 visit with Dr. Parfitt he noted, "Her CRP is significantly elevated." Elevated C-reactive protein levels are noted throughout Ms. Aliff's medical records, indicating inflammation.

14. PMR and fibromyalgia make sitting, standing or even lying down all extremely painful for Ms. Aliff. In addition to the severe aching, pain, tenderness and fatigue caused by those conditions, the medications that Ms. Aliff is required to take to treat them increase her glucose levels and make it more difficult to manage her diabetes. As a result of her uncontrolled glues levels, Ms. Aliff also suffers from diminished sight.

15. Ms. Aliff has nerve damage in her dominate left arm making typing extremely difficult. Her reactive airway and scar tissue from a previous neck fusion and cancer removal/thyroidectomy (lymphoma), cause her throat to become hoarse or high-pitched making her unable to speak well enough to make phone calls. The foregoing are major job functions and Ms. Aliff can no longer perform them.

16. In a fully favorable on the record decision, dated January 6, 2012, the Social Security Administration Attorney Advisor concluded that Ms. Aliff had been disabled since October 31, 2010.[4] The decision properly took into consideration the opinions of Ms. Aliff's healthcare providers and found that her statements concerning the intensity, persistence and limiting effects of her symptoms credible. Significantly, the SSA decision-maker came to the following conclusions in approving her claim:

> The claimant has not engaged in substantial gainful activity since October 31, 2010, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

---

[4] SSA decision attached hereto as Exhibit "D".

The claimant has the following severe impairments: polymyalgia rheumatic; diabetes mellitus; fibromyalgia; status post cervical spine fusion; lumbar spine degenerative disc disease; hypothyroidism; morbid obesity; attention deficit disorder; anxiety; and depression (20 CFR 404.1520(C)).

….

The claimant suffers from a litany of physical impairments that affect her ability to perform work on a regular and continuous basis. The claimant complains of wide spread pain symptoms that have been diagnosed as polymyalgia rheumatic, and fibromyalgia. The claimant's wide spread pain symptoms are exacerbated by her weight and by her diabetes and hypothyroidism. The claimant also suffers from a combination of depression, anxiety, and attention deficit disorder. All of her impairments are treated with prescriptions to a variety of medications that sub-optimally control her symptoms.

The claimant is limited to standing and walking less than 2 hours in an 8-hour workday. This is because of the combined effects of her wide-spread pain, her obesity, and her reasonable complaints of fatigue-like symptoms that manifest through labored breathing with even minimal exertion. If the claimant were to attempt to stand and walk more in a normal workday her symptoms of pain, fatigue, and shortness of breath would increase to the point no work activity would be possible for a significant period while she rested. …In addition, the claimant is limited to only occasional performance of the postural activities because of her low back problems combined with her morbid obesity. Physically, the claimant is not capable of more work-related activities because of the potential for a flare-up of her symptoms.

….

Mentally, the claimant suffers from depression, anxiety, and attention deficit disorder. The main symptoms of these impairments are emotional instability and diminished concentration and attention. Her emotional instability manifests in the form of shortness with others and an inability to interact appropriately with others, especially those with whom she is not familiar. As such, the claimant is only capable of less that occasional contact with the public. In addition, the claimant is limited to only simple, unskilled work because of her problems with sustained attention and concentration. The claimant is not capable of more complex work or more contact with the public.

….

The claimant's past work is a phone order taker for Sky Mall, a reservationist for U-Haul, a repair appointment taker for an ambulance repair company, and as a patient transporter for a medical facility. All of these positions require frequent to constant interaction with the public, whether in person or on the phone. As noted

above, the claimant's emotional instability limits her to less that occasional public contact during the course of a normal workday. As such, the mental demands of the claimant's past relevant work exceed her mental capabilities as set forth in her residual functional capacity. Thus, I find the claimant is not capable of performing her past relevant work."

….

The claimant has been under a disability defined in the Social Security Act since October 31, 2010, the alleged onset date of disability (20 CFR 404.1520(g)).

17.     LINA acknowledged that the SSA had found Ms. Aliff to be disabled for the purposes of Social Security disability benefits but failed to explain why it reached a different conclusion than the SSA claiming:

We are aware that Ms. Aliff were [*sic*] awarded Social Security Disability benefits; however, the standard for determining disability under this Policy may be different from standards used by the Social Security Administration (SSA). As a fiduciary under SPIRE CAPITAL PARTNERS, LP's STD's Policy, we are required to make our determination based on the applicable provisions of the Policy and the proof of loss information available. Without an opinion from SSA explaining the basis for its decision, we cannot evaluate its reasoning and so, can take note of its decision, but cannot rely on or otherwise promote that decision ahead of other proof of claim and policy information. We must make our determination independent of Social Security's determination and based upon the medical information provided and specific Policy provision requirements under SPIRE CAPITAL PARTNERS, LP Policy Number SGD0600885.[5]

18.     Ms. Aliff's counsel provided the SSA decision to LINA and highlighted the above listed significant excerpts from the SSA opinion by letter dated January 25, 2012.[6]

19.     According to policy at issue, disability is defined as follows:

An Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform the material duties of his or her regular occupation, or solely due to Injury or Sickness, is unable to earn more than 80% of his or her Covered Earnings.[7]

---

[5] Final Denial Letter dated Mar. 14, 2012, attached hereto as Exhibit "E".
[6] Letter dated Jan. 25, 2012 enclosing SSA decision attached hereto as Exhibit "F".
[7] Relevant Policy selection attached hereto as Exhibit "G".

The SSA decision-maker in Ms. Aliff's case identified the SSA's definition of disability in the decision provided to LINA, stating:

> Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

See Exhibit "D" at pg 5.

20. Clearly the SSA's standard for determining disability is more stringent that the standards articulated in the policy at issue. Even so, LINA did nothing more than simply acknowledge the award letter and inaccurately claim that they did not receive the decision detailing the rationale behind the decision.

21. By cherry-picking the record and giving disproportionate weight to notes made by Ms. Aliff's medical providers such as "no acute distress" and "normal pulses" and ignoring the plethora of medical evidence documenting her physical and mental debilitating ailments, LINA repeatedly denied Ms. Aliff's appeals.[8] Ms. Aliff has now exhausted her appeal rights under ERISA.

22. As of this date, Ms. Aliff has been denied benefits rightfully owing to her under the policy. LINA's decision to deny payment of her short-term disability benefits was grossly wrong, without basis and contrary to the evidence.

23. Ms. Aliff has met and continues to meet the policy's definition of disabled.

24. The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. Aliff's claim as required by ERISA. Instead, LINA acted only in its own pecuniary interests and violated ERISA by conduct including but not limited to the following: failing to properly consider and credit the medical opinions of Ms. Aliff's medical

---

[8] Denial letters dated Feb. 21, 2011 and Sept. 21, 2011 attached hereto as Exhibit "H".

providers; failing to consider the SSA's findings in spite of the fact that the policy requires its insureds to file for Social Security Disability and allows Defendant to take an offset for Social Security Disability benefits; and for failing to have its own medical reviewers physically examine Ms. Aliff as opposed to simply relying on a paper review even though the policy specifically allows LINA to require a physical examination.

25. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may have adjudicated Ms. Aliff's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

26. Ms. Aliff has exhausted any applicable administrative review procedures and LINA's decision to denying paying benefits is both erroneous and unreasonable and has caused tremendous financial hardship on plaintiff, so much so, that she has been forced to live in a homeless shelter.

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

27. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

28. At all times relevant to this action, Ms. Aliff was a participant of the ERISA Policy No. SGD0600885 ("the Plan") within the meaning of 29 U.S. C. §1002(7), and was eligible to receive disability benefits under the Plan.

29. As more fully described above, the denial and refusal to pay Ms. Aliff benefits under the Plan for the period from at least on or about November 1, 2010 through the maximum

benefit period, constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Aliff constitutes an abuse of discretion as its decision was not reasonable and it was not based on substantial evidence.

30. Ms. Aliff brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*.

2. That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. From at least November 1, 2010 through the present, Ms. Aliff met the Policy's definition of disabled;

4. Defendant shall pay Ms. Aliff all benefits due for the period from at least November 1, 2010 through the maximum benefit period in accordance with the policy;

5. Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6. Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

7. Defendant shall pay attorney's fees for Plaintiff's counsel;

8. Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

June 6, 2012

Respectfully Submitted,

/s/ Garrett W. Wotkyns
Garrett W. Wotkyns
**SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP**
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ  85253
Phone:  480-428-0141
Fax:  866-505-8036
gwotkyns@schneiderwallace.com

**OF COUNSEL**:
Peter H. Burke, Esq.
Gregory J. McKay, Esq.
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, Alabama 35205
Phone: 205-930-9091
Fax:    205-930-9054
gmckay@bhflegal.com
pburke@bhflegal.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Director of Insurance
2910 North 44th Street
2nd Floor
Phoenix, AZ 85018